case this morning is number 22 2026 Board of Supervisors of Issaquena County v. United States. Okay, Mr. Pendley. May it please the court. Good morning, Your Honors. Patrick Pendley, a member of the Bar from Louisiana and a new member of the Bar of this court. Patiently, before I start the argument, I'd like to observe that looking around at all the counsel in dark blue and dark gray suits, I feel like a social peanut wearing my seersucker. You're not the great flood of 1927 on the Mississippi River and lingering impacts even to this day of that flood in the economic disaster that happened thereafter. Okay, so but why are we here? I mean, the party for our claims dismissed, finding that you hadn't sufficiently alleged but for causation. Why didn't you just you say you have an expert who testified to that? Why didn't you simply amend the complaint to satisfy the court of federal claims with explicit allegation which you say you were capable of making? Well, Your Honor, we thought we had amended the complaint to satisfy the pleading requirements. Why didn't you amend it again when the district, when the court of federal claims made its ruling? Well, because we thought we thought we had satisfied. Of course, once Judge Smith ruled, then there was nothing to amend at that point because he dismissed the case in its entirety. Or you could have asked to amend at that point. True, Your Honor, absolutely true. We could, but if this court reverses, Judge Smith's opinion, which we think it should just based on the on the fact that we did amend and we believe we have alleged causation by for the damages that have been sustained by Issaquah County, Mississippi as a result of the flooding in 2019 of that county and the destruction that occurred. So and that's about all I can say on that, Your Honor. I at least want to see if I get more from you than that. There's an original complaint and an amended complaint. Are you suggesting that you did the amendment specifically cognizant of the We filed the original complaint, Your Honor. We amended when counsel for DOJ suggested to us that our original complaint was not sufficient, at least in his... I'm sorry, on the Budford causation grounds? Yes, yes. So we filed the amended complaint and that was then followed by the motion. And why did you not at that point include any express allegation that the flooding that you sadly suffered in 2018-2019 was worse than it would have been had the government not done what it had done? I don't see any explicit allegation of that. I understand. I think I would respectfully suggest that that's a very strict reading, if you will, of the complaint and the situation that occurred. It's without any factual basis in the record because there is no evidence in the record because we're motion to dismiss, not a motion for summary judgment. It's just difficult for us to argue, but we alleged in the... Yeah, the complaint does need to allege Budford causation. There's a case that seems quite similar to this one, which neither side cites, called A&D Auto Sales, which is a takings case and it says you have to allege Budford causation. Yeah, the similar case, a recent case is the state of Mississippi versus the United States of America that was decided by Judge Kaplan recently. And she said out... It's not binding on us, whatever she said. I'm sorry, Judge? It's not binding on us. It's not authority. I understand. I understand, Judge. But she set out the criteria, which we looked at and considered and believed that we had satisfied the criteria necessary at this stage of the case, which was the pleading stage of the case. There's no question based on your expert report that you could have explicitly alleged Budford causation, right? And you had... Did you have the expert report when you amended the complaint? We have the expert report. Did you have it at the time you amended? No, we did not, Judge. That came later. But we have it, but it's not part of the record, so this court can't consider. Did you feel at the time of the amended complaint that it would be inconsistent with your ethical, you know, constraints as an attorney to allege in good faith that, hey, the flooding is worse than it would have been if the government hadn't done what it did? I don't understand what was holding you back. It's basically one sentence you needed in the complaint. Well, Judge, of course, we looked at the case law at the time and we didn't necessarily agree with Mr. Tall. But rather than... Didn't necessarily agree with him that you had to allege Budford causation? You know, I don't recall. I just know that he was saying you really you need to freshen up your complaint, so... Is it your view that you did allege Budford causation or that you didn't need to? No, we believe that we alleged it. Now, we didn't use... This is what, in paragraph 27 of your complaint? Yes, I believe that's correct. Let's see. Of your amended complaint. Yes, sir. 27 of the amended complaint. It's our belief, perhaps erroneously, that... Do you have any hesitation... If we sent this back, in this case, were to go forward, do you have any hesitation in filing an amended complaint if you were given leave to do so that contains the allegations that are in your brief that are not in your complaint? Like that the flooding used to be predictable and now, due to what the government does, it's not predictable? Or at page 7 of your opening brief, you say we've experienced flooding of a greater depth and duration than if the government had taken no action at all. Do you have any reluctance, hesitancy, or doubt that if you were permitted to do so, you could file a second amended complaint with those allegations? After this discussion, there's no question about that, Judge. Clearly, we would do that. We did not believe that the words but for were necessarily magical words. I mean, it's the context that we were alleging the facts of what happened and the reason why the flooding occurred that we were alleging in the original complaint and in the amended complaint. And we read, we looked at the cases that Judge Kaplan pointed out in the Mississippi, state of Mississippi case that, in other cases have said this, that tanking, tanking's claims involving flooding are very fact oriented. And we believe that we had alleged. That's exactly why you need to be specific about the allegation. Well, Judge. It's not hard. No, it is not hard, Judge. I understand. You've saved yourself all the risk of taking this appeal. Well, because we alleged, we set forth the history, we set forth what physically, as we understood, happened in 2018 and 2019 on the Mississippi River and the Yazoo Council. And this is my concern as well. They pointed out to you before filing a motion to dismiss what the deficiencies were in your complaint. You tried to correct them. It seems to me you failed. You then take an appeal. You don't ask for leave to amend. You don't ask us to send the case back with leave to amend. You don't even come in here today really and ask to let us file an amendment. You really seem to be here principally to convince us that you've already done enough. Is it really, is it fair to the government or on what principle would you cite that says we can go ahead and at this very late stage when the government's had to respond to your complaint, win a motion to dismiss, brief an appeal, argue an appeal, that we could at that late stage say, well, no harm, no foul, go back and try again? Well, Judge, first of all, I don't think it's the late stage of the litigation at all. The government has never even answered either one of the complaints, the original or the amended complaint. To me, we're in the embryonic stage of the litigation. And I fully expect, and what we're asking is the court to reverse Judge Smith and send it back for further proceedings. Now, I fully expect that as we do the further proceedings that there will probably have to be amendments. Whether we amend and just use the magic words, but for the Corps of Engineers decisions regarding failure to put the pumps in, then there are going to be, I'm sure, other amendments that are going to have to be made. Okay, but the failure to put the pumps in doesn't state a takings claim. That's inaction under St. Bernard Parish. I'm sorry. The failure to put the pumps in, it doesn't state a takings claim. St. Bernard Parish considered exactly that kind of situation and says that's inaction, and it doesn't state a takings claim. Absolutely, Your Honor, and we don't quibble with that. Two things, though. St. Bernard case came on appeal after the trial on the merits, and the plaintiffs in St. Bernard, as we read St. Bernard, just didn't carry the burden of proof. We're not anywhere near that stage of the proceeding. It is not inaction on the part of the Corps of Engineers to not put the pumps. This was one project to build the gates, the levees, and put the pumps in, and that recognition of what was going to happen when the rivers were leveed goes all the way back into the early 20s. Are you saying not putting pipes in is not inaction? I'm saying that when they failed to put what they said they were going to do, that was not inaction because it's all part of one project. As I understand, inaction is when a situation occurs and the government just doesn't do anything about it. Here, they said we're going to do three things. We're going to build levees, we're going to put the gates in, and we're going to put the pumps in to pump water over the dike to keep it from, because we recognize it's going to pond and build up behind the gates. Suppose we say that under St. Bernard Parish that you don't have a case based on an allegation of failure to put the pumps in. That doesn't help you state We wouldn't have a case left, you know. I don't understand that. The pumps, I take it, are just something that would have, in your view, ameliorated the problem that was created by the levees and by leveeing the river. And leaving the pumps out meant the particular area of Issaquahna County subject to greater flooding than would have occurred if the levees hadn't gone up. It would be nice if the pumps were there and you wouldn't have the problem. Your case, I take it, is that the leveeing of the river without pumps created a problem that wasn't there before, i.e. but for, right? Is that a fair characterization of your case? Yeah, the depth of the water and the duration of the flood, failure to put the pumps in, is what occurred. Now, we're not saying- But what's Bryson trying to help you? I understand. And I appreciate that, Judge. I really do. But I'm trying to be straightforward with the court. Some of this land behind the dike did flood. We're not saying that it never flooded. And this was a first-time flood, like upper Addickson Barker. It clearly flooded in 1927. Right, right. Yes, it did. It did. All right. But your argument, in effect, seems to me is that the project, as it was initially conceived, would have been fine if they'd had the pumps and so forth, at least probably. But since they didn't do the last part of what they had planned to do, then the project is exactly the way it had been designed without the pumps and the drains, right? Right. And that, as such, that was a project that was going to make things maybe better for people upstream and downstream, but it was not making it better for the people in that area of Issaquahna County, right? That's correct. All right. So the draining really doesn't have anything to do with anything. It happens, it so happens that if they had put the drains in, they'd be better off. But looking at the- Pumps. I mean, the pumps and so forth. But if they had initially conceived the project without the pumps, you would be here with exactly the same claim, right? Well, of course, because they'd have built the dike and the levee and you'd have made a bathtub with no way to drain it. And that's what you got. That's what we got. But that's not what they sold. Okay. But you've got, just to be clear, you've got that even if we say the pumps, the failure to put pumps in is not part of your claim. You still have, they built some walls and they didn't drain it anywhere. And that's government action. You would still have a case or you would not have a case? No, the pumps was designed to save us. Right. But in other words, the pumps were designed to keep the water behind the gates and behind the levees in its normal banks. Because that area is covered with little springs and bayous and tributaries. But what we have is we've got this water that's flooding, that piles up. And granted, the water that fell, the storm water that fell in 2018 and 2019 behind the gates was very unusual. It was much more extreme than normal. But had the pumps been there, they're designed to keep this water moving out when you can't normally or naturally flow through the gates because the gates are closed. Okay. Why don't we hear from the government? We'll give you two minutes for a rebuttal. Mr. Todd. Okay. Thank you, John. Good morning, Your Honors. May it please the Court. Brian Toth from the United States Department of Justice, representing the government as defendant appellee. I'd like to start. It seems like there's a lot of common understanding between the sides on what the correct law is and what needs to be proved at trial. Their main allegation, as you know, is that I'm not sure that there's agreement about that because he keeps talking about the pumps and the URU and St. Bernard Parish seems to support you that the failure to put in the pumps is inaction, which couldn't lead to a takings claim. They'd have to say, put aside the pumps. This project made the flooding for us worse than it would have been without the project. Right. I don't think, I mean, if you look at their appellate brief, what they've written in their single appellate brief, they didn't file a reply to our arguments. They did not challenge the Court of Federal Claims' holding that inaction doesn't sufficiently support a takings claim. So any challenge to that is forfeited here. I think the government and effectively what plaintiffs have done by their litigation strategy are in agreement on that. Okay. Well, let's put that aside. I mean, what they seem to be saying in their brief is that we were worse off as a result of this project than we would have been before. And then under, you know, St. Bernard and A&D Auto Sales, I don't know whether you're familiar with that case, that, you know, that's what you've got to allege for a takings claim. And you've said, no, you didn't allege that. And Senator Smith agreed with you. And I guess the question I have is, at this point, would you object to their amending their takings claim? I'm going to have to take the position that we would object because they've, for several reasons, they never made, I mean, and they all fundamentally relate to the issue of party presentation, that it's up to the party to make its own choices through its lawyers about how to litigate a case. And, you know, you look at Twombly, it rejected the any state of facts rule where you simply look at what's pled and, you know, the facts that are pled and try and figure out whether there's any construction of those facts that would fit the legal elements of a claim. It's more driven by the parties now than it was, say, 20 years ago in litigation. And so you really have to look at the choices they've made. They didn't, well, they did seek to, they did file an amended complaint before we moved to dismiss, but they didn't file a motion for leave to amend in response to our motion in the trial court. And then in their opening brief, they didn't make any to do about that. They didn't ask in their brief for leave to amend. So, and the judge, you know, in the Court of Federal Claims didn't rule on a motion for leave to amend. So we have no idea how that court would have construed that. What, taking paragraph 27 of their amended complaint, which you've got, I'm sure. Yes. What exact language do you think would be sufficient to satisfy the requirements of specificity with respect to the St. Bernard test and others? What exactly would they have to add to that paragraph that's not there now, either expressly or by implication? I think they'd have to say something along the lines of absent any government action, including this project that they're talking about, the Yazoo Backwater Project, which includes that steel bayou control structure. That's one piece of the project, but also including the entirety of the Mississippi River and Tributaries Project, which contains additional levees protecting the Sequina County on the west side from flooding of direct waters from the Mississippi River. That absent the entirety of the government action, flooding would not have occurred to the same or greater extent as a result of what the government did. I may not have said that as articulate. Do you agree they say exactly that in their blue brief? That is, if they had just submitted the amended complaint, we wouldn't be here. They come close. They say at page seven, plaintiff's property has experienced flooding, which is of a greater depth and duration than if the government had taken no action at all, after they explain the actions that you just described. That would be enough, wouldn't it? I think it's very close. How does it fall short? Well, the problem I have with it, it may be sufficient. The problem I have with it is that we're trying to pin down. You may not want to be pinned down, but it's important to know exactly what you think is wrong. I think what's wrong is they bring it up in their brief on appeal. Well, I understand that. What is wrong, Judge Stark's question is, if that language had been the complaint, would you have any quibble or quarrel? Yes. It's the relationship with the inaction that's played throughout the rest of their complaint. Because you see in the rest of their complaint, they do use but-for language, but they use it with respect to the pumps. But that would have been, I know we're in a counterfactual world, but that's the substance of a motion to strike or some way to narrow the case to make clear or a partial motion to dismiss. That's not a, the government's completely off the hook for the allegations about the actions you took that harmed them. I think even looking at the 2019 flooding, they talk in their complaint about how the government's operation of the project benefited the county when the gates were closed. Then they cherry pick the failure to raise the gates after rain fell. That's not government action. And St. Bernard says you can't cherry pick parts of the operation of the government's action without looking at it as a whole. So I would be skeptical of the lines from their brief just being transplanted to their complaint where the rest of the complaint is so overwhelmingly focused on the pumps and the cherry picked part of failing to raise the gates after it rained. I'd like to do some more cherry picking then of the complaint we have in front of us. So paragraph 27 that Judge Bryson pointed you to, taking, first of all, would you agree our law is we have to read the complaint, drawing all reasonable inferences in favor of the plaintiff at this early stage? Yes, with the caveat that legal conclusions don't have to be taken as truth. So the second sentence of 27 is routing the drainage of the entire Yazoo Basin to the steel bayou control structure and allowing the floodgate to remain closed created a massive pool of water from which there is no drain. Why isn't it a reasonable reading of that that the government came in 80 years ago, built the floodgate, removed effectively a drain, and therefore the flooding is worse than it would have been? Why is that not a, I grant you it's a very generous reading, but why is that not within the realm of a reasonable reading of that sentence? I think it's putting blinders on to what they're relying on, which is the failure to complete the project as planned. And I think that gets back to omitting certain components of the project, the floodway, and omitting the pumps. You're taking that from the rest of the complaint. That's not in that sentence, at least. What about this? At paragraph 22 of the amended complaint, 830, they write, and they're referring to the late 2018, July 2019 period. Because the gates of the steel bayou control structure were closed, the rainwater had no outlet through which to drain into the Mississippi River or anywhere else. Again, isn't it reasonable to infer that had the federal government never come down there and built all these structures, there would have been an outlet for the water to drain, and therefore we're worse off than we would have been had you not come in originally? Yeah, I just, I don't think there's enough to reasonably infer what the pre-project state of affairs was from that one sentence. I'm happy to answer other questions the court might have, but if not, I mean, I don't I think it's important to understand how this project operates. I think the court has a fair understanding of it. I would just point to these diagrams that we submitted in the trial court as demonstratives on pages, I think it's 47 and 48, to show that the gates will not, they'll remain closed so long as the river side, the stage of the river is higher than what's on the land side of the project. It's fundamentally protective of them. It's hard to conceive of how the operation of this project in 2019 overall, just taking that as their conceptualization of the government action, how even that overall didn't benefit them. I understand there was flooding of the property, precipitation was involved, that wasn't the act of the government, and the way the project functions and the nature of the project is these diagrams that we picked, demonstrates that it's generally going to be protective when the river is high. So I think construing the complaint against that understanding of the project, it's very difficult to understand how they could successfully plead a claim. My friend also- The key element of what you just said is successfully, i.e. that they could ultimately prevail. Your argument now seems to be that this project, despite the unhappiness that resulted in 2019, has overall benefited everyone in the protected area, including the people in that unfortunate area that got flooded the worst. But that's a merits question. Well, I probably should have said plausibly supports a claim rather than successfully. They don't have to obviously prove it at this stage. They do have to allege something that's plausible. And with the proper understanding of how this project operates and how it operated during the flooding in 2019, I don't believe that it's plausible just to infer that the project overall was detrimental to them, even despite the catastrophic flooding that they experienced. If we were to affirm the dismissal, would they have the possibility of starting a whole new case with a complaint that is potentially adequate? That is, I mean, was this dismissal without prejudice or does it act as a prejudicial merits-based dismissal? Do you know? I think it would be the latter. I think there would be a race judicata effect. I mean, if they were- that's based on the 2019 flooding. If there were new facts or new developments since then, they wouldn't be barred from trying to bring a new claim. So I mean, I'm really struggling. I candidly will admit because it does- I think there's an argument maybe that they have pled enough if you're super generous to them. But assuming I don't get that far, I think their brief is more than adequate had they put those allegations in the complaint. Maybe not to prevail on the merits. I'm not taking any view on the merits. But had they sought leave to do that, it's hard for me to imagine that a trial judge wouldn't allow them to do that. And while I completely understand your argument about party presentation, I don't know these allegations are so significant. Would it really be wrong, I guess, for us to give them another chance? Well, I would point the court to the cases we said in the brief, the Acosta-Dicambio case and the Kimmel case that are binding and that find it- find claims waived if they're not pleaded in a complaint. And that's what we have. So in raising these assertions in their brief, plaintiff mentions the pretension of an expert. That was never brought into the record in the trial court. It's not part of the record on appeal. It shouldn't be considered. But even to this day, I mean, there's talk even this morning about an expert report. I haven't seen an expert report. So I am really hesitant to say that if these assertions in the brief are based on some report that hasn't been disclosed or is part of the record on appeal, that that's in any way supports allowing them to go back and get yet another try at this. One last thing. Mr. Penley gave you credit, as I understood it, for pointing out errors in the original complaint before having to do the motion to dismiss practice. Is it correct that you pointed out the failure to plead but for causation? So I can't take credit for that. It was a different trial counsel, but- and I normally wouldn't say that I wasn't the trial counsel, but I'll give the trial counsel the credit here. So, and I'm not sure what the nature of those conversations was. I can say just looking at the complaint, yeah, you pointed out some of the differences in the complaint already. The big difference that I noticed in trying to do a comparison was the addition of additional details about damages. That's what I saw. Names of roads, for example, that were- Was paragraph 27 in the original complaint in its current form or amended? I think it was paragraph 25 in the original complaint. 25 and 26 in the amended complaint are the ones that seemed new to me. And then there may have been a new sentence in 27. I don't have a red line in front of me, but I was just looking as I was answering- It looked to me that new 27 is old 25. Old 25, that's right. And appears to be identical. So you don't know, I mean, so it's an interesting situation that I understood them to be giving you all the government credit for pointing out the very pleading deficiency that we're here on. But in reality, you're not sure? There's no record of that, I guess? I don't have knowledge of that. Often the government does confer before they file a motion to dismiss. Well, if the suggestion was made, it appears to have fallen on deaf ears. Very well. So I'm out of time, but we would ask the court to affirm. Happy to answer any other questions that carry me over time, but otherwise, appreciate it. Thank you, Mr. Ta. Mr. Pendley, you have two minutes. Just a couple of observations, Your Honor. My co-counsel tells me that really DOJ pointed out that they wanted us to list all the roads and culverts and bridges that were destroyed by the 2019 flood. And that was part of the amendment that we did, the first amendment complaint. And I think Judge Stark, you asked the question, or perhaps Judge Bison, you pointed out one of our complaints was, and it's in the complaint, they did not open the gate in 2019, the gates, when the river was, the riverside was higher than the landside. Well, they couldn't open the gates because that would have exacerbated. Water would have come from the river onto the land. Yeah, I mean, the water from the river would have just flooded back in, and to, into the Yazoo River Basin. So they couldn't open. But, and that's always been understood. They couldn't open the gates when that situation occurred. But it's the problem, as we see it, rightly or wrongly, is that there was no provision, notwithstanding the Corps' recognition of the problem from the 20s, or early 30s, at the latest, that building this levee, building this dike without some provision to evacuate the water that came on the riverside, on the landside, with the gates closed, was going to be a disaster. And it wasn't just one. We talked about the, in the brief, we talked about the Eudora floodway, which was ultimately killed. Then they talked about the Buff River floodway through Louisiana, which was killed, both of them by intense local and political opposition to transferring that water from the Mississippi before it got down to the Yazoo River, mouth of the Yazoo River. And so they just, and of course, we talked a little bit about the Little Sunflower River. That's such a small situation, it really is meaningless in the overall scheme of things. It's the Bayou Steel flood control structure. And I just ask the court to take into consideration that it's the Bayou Steel flood control structure, which is three parts. It's the gates, it's the levees, and it was the pumps in the proposal. And they just, our view, the court just didn't follow through. Okay. Thank you, Mr. Finley. Thank you, appreciate it, Josh.